USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 94-2231 JOHN P. COYNE, ET AL., Plaintiffs, Appellants, v. TABER PARTNERS I, d/b/a AMBASSADOR PLAZA HOTEL & CASINO, ET AL., Defendants, Appellees. ___________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Justo Arenas, U.S. Magistrate Judge] _____________________ ___________________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ ___________________________ Mark S. Shuman, with whom Jose L. Rivero Vergne and Moreda & ______________ _____________________ ________ Moreda were on brief, for appellants. ______ Maria Soledad Ramirez-Becerra, with whom Mercado & Soto was _____________________________ ______________ on brief, for appellees. _________________________ May 4, 1995 _________________________  SELYA, Circuit Judge. This negligence action perished SELYA, Circuit Judge. _____________ when the lower court granted a motion for summary judgment. Discerning error, we resuscitate the suit.1 I. BACKGROUND I. BACKGROUND Consistent with the summary judgment standard, we limn the material facts in a light that flatters, but does not impermissibly distort, the plaintiff's claims. On July 8, 1992, a local union representing taxi drivers and tour operators frustrated by competition from hotel- operated taxis and other amateurs declared a strike that virtually paralyzed transportation services at San Juan's principal airport. Despite a beefed-up police presence, strikers congregated at various points, including Baldorioty de Castro Avenue (the main thoroughfare leading to and from the airport).2 The labor unrest was open and notorious; reports of the strike appeared, inter alia, in the July 9 edition of a major newspaper, _____ ____ the San Juan Star. _____________ Carol Coyne, a resident of Massachusetts, blissfully unaware of the strike, flew into the airport on July 9. Because  ____________________ 1Nominally, there are two plaintiffs Carol Coyne and her husband, John and two remaining defendants Taber Partners I (Taber), proprietor of the Ambassador Plaza Hotel, and its insurer, United Community Insurance Co. Since John Coyne's claims derive from the injuries that his wife sustained, and since the insurer's liability is coextensive with its insured's, under local law, we treat the appeal as if Carol Coyne and Taber were the sole parties in interest. 2The obstructionist tactics met with some degree of success. For example, the record indicates that strikers thwarted at least one effort to usher tourists away from the airport by van. 2 she had reserved accommodations at the Ambassador Plaza, Taber dispatched a driver, Angel Marrero, to transport her from the airport to the hotel. While waiting for Taber's emissary to arrive, plaintiff witnessed several confrontations between strikers and motorists. Following the same practice he had thrice utilized that day, Marrero crossed the picket line driving a red Ford rented by the hotel. When he reached the terminal, he refused to alight from the vehicle and plaintiff noticed that he seemed frightened. Once he had collected the plaintiff, other prospective guests, and their luggage, Marrero headed for the hotel. After the Ford reached Baldorioty de Castro Avenue, a man stepped in front of it and blocked its path. Other persons began hurling objects at the car.3 One such projectile shattered a window and injured the plaintiff. Marrero eventually managed to extricate the vehicle from this precarious situation and immediately sought medical attention for plaintiff. Some time elapsed. Then, plaintiff, striking a blow of her own, sued Taber in Puerto Rico's federal district court. See ___ 28 U.S.C. 1332 (1988 & Supp.IV 1992) (stating requirements for diversity jurisdiction). After preliminary skirmishing, not now relevant, the court, in the person of a magistrate judge, see 28 ___ U.S.C. 636(c) (1988), granted Taber's motion for brevis ______ disposition. This appeal ensued.  ____________________ 3A rational factfinder could infer that not only the man who blocked the Ford's path but also the rock-throwers were strikers or strike sympathizers. 3 II. THE SUMMARY JUDGMENT STANDARD II. THE SUMMARY JUDGMENT STANDARD The Civil Rules empower a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We have written prolifically on the nuances and ramifications of this rule, see, ___ e.g., National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, ____ _________________________ ______________ 735 (1st Cir. 1995), petition for cert. filed, 63 U.S.L.W. 3736 ________________________ (U.S. Apr. 4, 1995) (No. 94-1630); Vasapolli v. Rostoff, 39 F.3d _________ _______ 27, 32 (1st Cir. 1994); Dow v. United Bhd. of Carpenters, Etc., 1 ___ _______________________________ F.3d 56, 58 (1st Cir. 1993); Pagano v. Frank, 983 F.2d 343, 347 ______ _____ (1st Cir. 1993); Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, _____ ________________________ 793-94 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993); _____ ______ United States v. One Parcel of Real Property (Great Harbor Neck, ______________ ___________________________ __________________ New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992); Rivera- __________________ _______ Muriente v. Agosto-Alicea, 959 F.2d 349, 351-52 (1st Cir. 1992); ________ _____________ Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7-8 (1st ____________ __________________________ Cir. 1990); Garside v. Osco Drug, Inc., 895 F.2d 46, 48-49 (1st _______ _______________ Cir. 1990), and it would be pleonastic to rehearse that jurisprudence here. For present purposes, it suffices to say that "summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne, 976 F.2d at 794. A Rule 56 motion _____ 4 may well end the case unless the party opposing it demonstrates the existence of a trialworthy issue as to some material fact. Exercising de novo review, see Pagano, 983 F.2d at 347, and __ ____ ___ ______ taking the facts (including the reasonable inferences therefrom) in the light most favorable to the plaintiff, see Rivera- ___ _______ Muriente, 959 F.2d at 352, we conclude that the evidence of ________ record in this case is "sufficiently open-ended to permit a rational factfinder to resolve the [liability] issue in favor of either side," National Amusements, 43 F.3d at 735. Thus, the ____________________ court below terminated the suit prematurely. III. ANALYSIS III. ANALYSIS In granting summary judgment, the lower court found plaintiff's claim wanting in two ways. First, the court ruled that because the rock-throwing incident took place "outside the [hotel's] premises," Taber did not owe "a duty to protect and provide reasonable security measures." Second, the court reasoned that the harm of which plaintiff complained "was not foreseeable or causally related to any acts or omissions" attributable to Taber. We examine each theorem separately. A. Duty. A. Duty. ____ The substantive law of Puerto Rico governs the issue of negligence in this diversity suit. See Erie R.R. v. Tompkins, ___ __________ ________ 304 U.S. 64, 78 (1938); Daigle v. Maine Med. Ctr., Inc., 14 F.3d ______ _____________________ 684, 689 (1st Cir. 1994). Under Puerto Rico law, negligence actions generally hark back to article 1802 of the Civil Code, which imposes liability upon a person who "causes damage to 5 another party through fault or negligence." P.R. Laws Ann. tit. 31, 5141 (1991). In this instance, plaintiff alleges that article 1057 of the Civil Code, P.R. Laws Ann. tit. 31, 3021 (1991), excerpted in the margin,4 puts a gloss on article 1802. Taber demurs, asseverating that article 1057 does not apply. We agree with plaintiff that, here, article 1057 informs the operation of article 1802. Compare, e.g., Rivera Perez v. Cruz _______ ____ ____________ ____ Corchado, 87 J.T.S. 51 (1987) (Official English Translation: No. ________ RE-86-18, slip op. at 8) (discussing interface between articles 1057 and 1802). It brooks no dispute that article 1057 imposes liability upon certain establishments, such as hotels, schools, and hospitals, that fail to provide security commensurate with the circumstances attendant to their operations. See Estremera ___ _________ v. Inmobiliaria Rac, Inc., 109 P.R.R. 1150, 1154-55 (1980) ________________________ (stating that liability can be found when circumstances create a demand for greater protection, but the establishment nonetheless neglects to bolster security). The duty to furnish heightened security is thought to stem from the character of the enterprise in which the defendant engages and from the special nature of the  ____________________ 4Article 1057 provides in pertinent part: The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place . . . . P.R. Laws Ann. tit. 31, 3021 (1991). 6 relationship between the defendant and its invitees. See id. at ___ ___ 1154 (noting that a hotel "basically substitutes [for] a home"). On this rationale, the Commonwealth's courts have made pellucid that the prospect of criminal activity may give rise to the need for such an establishment to furnish "a wider scope of protection and security than can be supplied by law-enforcement agencies." Id.; accord Elba v. Univ. of P.R., 90 J.T.S. 13 (1990) (Official ___ ______ ____ _____________ English Translation: No. RE-86-214, slip op. at 23) (finding that university's failure to provide adequate security in a high-risk rape area gave rise to violent assault of female student). Notwithstanding these general principles, the magistrate judge, accepting artificial distinctions drawn by Taber, ruled that article 1057 landed wide of the mark, and that, on the facts reflected in the summary judgment record, Taber owed no duty to furnish security for plaintiff's protection. The magistrate advanced two theories. Neither holds water. 1. Cabdrivers' Liability. Relying primarily on Jacob 1. Cabdrivers' Liability. ______________________ _____ v. Eagle Star Ins. Co., 640 F. Supp. 117 (D.P.R. 1986), the ____________________ magistrate posited that, as a matter of law, cabdrivers (and, ergo, their employers) are not liable to passengers for crimes committed by third persons. Jacob is not a comfortable fit. _____ In Jacob, an independent cabdriver transporting fares _____ from the airport to a hotel paused at a red light. Thieves rushed the car, held the driver at gunpoint, and attempted to rob the passengers. In the commotion that ensued, a passenger was shot. See id. at 118. The district court concluded on the ___ ___ __ ___ 7 particular facts of the case that a cabdriver had no duty to __________ _____ __ ___ ____ guard against third-party criminal activity. See id. at 119. In ___ ___ reaching its decision the court noted that "[u]nlike a hotel . . . the nature of [defendant's] business does not demand special security measures." Id. ___ Here, however, unlike in Jacob, the defendant is a _____ __ hotel, albeit one that is being sued because it elected to furnish transportation services ancillary to its principal business. Moreover, unlike in Jacob, where the court emphasized _____ that the cabdriver was "a public carrier for hire," id., the ___ operator of the vehicle rented to Taber was not a common carrier (or even a cabdriver) but an employee of the hotel, performing a private service for a private purpose. Thus, though Coyne was in a car, she was just as much a ward of the hotel as if she was in her suite or in the lobby. Even assuming, then, that taxicab operators are not within the reach of article 1057 a matter on which we take no position we are of the opinion that the defendant here must be viewed as an innkeeper rather than as a taxicab operator. It follows, therefore, that the magistrate's reliance on Jacob does _____ not resonate with the issue of duty in the instant case. 2. Locus. Though Jacob is inapposite, the 2. Locus. _____ _____ magistrate's opinion raises another question about the existence of an actionable duty. This question emanates from a dictum in Chapman v. E.S.J. Towers, Inc., 803 F. Supp. 571 (D.P.R. 1992). _______ ____________________ There, the court refused to grant summary judgment, finding the 8 defendant hotel potentially liable for the injuries sustained by the plaintiff guest as a result of third-party criminal activity. See id. at 575. Nevertheless, Judge Perez-Gimenez wrote: "Had ___ ___ the situs of the crime in this case been a place other than the hotel premises, the Court might not have been hesitant in granting the defendants' motions . . . ." Id. Citing this ___ dictum, the magistrate suggested that, even if Taber owed a duty to provide heightened security qua transporter, that duty ___ obtained only as to acts that occurred on the hotel's premises. We place no weight on this slender reed. It is not the physical locus of the act, stricto senso, that gives rise to the _______ _____ hotelier's duty to furnish heightened security. Rather, the touchstone of the duty consists in roughly equal parts of the hotel's special relationship with its guests, its knowledge of incipient peril, and its ability to exercise a meaningful degree of control over the situation, regardless of the situs. We think this approach is compelled by the reasoning of the Puerto Rico Supreme Court in Elba. There, the court anchored ____ the University's duty to provide adequate security to persons with whom it had a special relationship (students) in knowledge the "previous occurrence of similar criminal acts [and] the fact that university authorities knew or should have known about them" coupled with the nonperformance of acts within the defendant's control "the failure to eliminate conditions that may give rise to sexual assaults; the total absence of a priority system to protect the students; and lack of adequately trained security 9 personnel." Elba, supra, slip op. at 16. Though the rape in ____ _____ Elba occurred on the campus, we believe that the court's ____ reasoning clearly indicates that the tri-cornered combination of affinity, knowledge, and control, rather than a one-dimensional location test, is the key to determining whether a duty to provide security exists. So it is here. Affinity is a given; Taber and the plaintiff were admittedly in a host-guest relationship. Knowledge exists, at least to the extent that, as we demonstrate infra, a reasonable jury could find that Taber knew (or should _____ have known) of the strike and the likelihood of violence that it portended. Similarly, a jury could find that Taber had the requisite degree of control; it employed the driver, rented the car, made the transportation arrangements with newly arriving guests, honored Coyne's reservation, dispatched the vehicle, and selected the route. This combination of affinity, knowledge, and control is sufficient to trigger a legally enforceable duty. We have said enough on this score. Bearing in mind "the circumstances of the persons, time, and place," we think a jury could supportably find that a duty to provide security arose under P.R. Laws Ann. tit. 31, 3021. See Estremera, 109 P.R.R. ___ _________ at 1154 (stating that a duty to provide additional security may arise when the circumstances so warrant); see also Rivera Perez, ___ ____ ____________ supra, slip op. at 8. And since there is no evidence at this _____ stage that Taber employed any special security precautions, we believe that a jury, not a judge, ought to say whether Taber 10 failed to take steps that its duty required.5 See Negron v. ___ ______ Orozco Rivera, 113 P.R.R. 921, 929 (1983). _____________ B. Foreseeability. B. Foreseeability. ______________ Even if a jury could find that Taber violated a duty owed to plaintiff, a breach of duty is not actionable absent a causal relationship between the breach and the ensuing harm. See ___ Elba, supra, slip op. at 12. "[F]or this causal relation to ____ _____ exist the damage must have been foreseeable and avoidable had the omitted action been timely taken." Id.; see also Malave-Felix v. ___ ___ ____ ____________ Volvo Car Corp., 946 F.2d 967, 972 (1st Cir. 1991) (noting that _______________ foreseeability serves as the "linchpin" for establishing tort liability under Puerto Rico law). In Puerto Rico, "the rule of foreseeability does not mean that the precise risk or the exact result which was encountered should have been foreseen. The essential factor is to be under a duty to foresee, in a general ____________ way, consequences of a particular type." Gines v. Aqueduct & ___ _____ ___________ Sewer Auth., 86 P.R.R. 490, 496 (1962) (citing 2 Harper and ____________ James, The Law of Torts 1147 (1956)) (emphasis supplied). ________________ In most situations, causation questions are both factbound and case-specific. Thus, such questions ordinarily are grist for the factfinder's mill. See, e.g., Peckham v. ___ ____ _______ Continental Cas. Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990); __________________________ Swift v. United States, 866 F.2d 507, 510-11 (1st Cir. 1989); _____ ______________ Springer v. Seamen, 821 F.2d 871, 876 (1st Cir. 1987). Puerto ________ ______  ____________________ 5We do not decide today that Taber could, or should, have taken any particular security precautions. We hold only that it is for the jury, not the judge, to make this determination. 11 Rico follows this general trend. See, e.g., Quinones-Pacheco v. ___ ____ ________ _______ American Airlines, Inc., 979 F.2d 1, 5-6 (1st Cir. 1992) _________________________ (applying Puerto Rico law); Marshall v. Perez Arzuaga, 828 F.2d ________ _____________ 845, 847-48 (1st Cir. 1987) (applying Puerto Rico law), cert. _____ denied, 484 U.S. 1065 (1988). ______ This does not mean that foreseeability is always a jury ______ question. To establish the foreseeable character of an event, the evidence must be such that the factfinder rationally can conclude that the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances. See Pacheco ___ _______ v. Puerto Rico Water Resources Auth., 112 D.P.R. 367, 372 (1982); _________________________________ Jimenez v. Pelegrina, 112 P.R.R. 881, 886 (1982). Because a _______ _________ defendant "will not be relieved of liability by an intervening cause which could reasonably have been foreseen, nor by one which is a normal incident of the risk created," Widow of Andino v. ________________ Puerto Rico Water Resources Auth., 93 P.R.R. 168, 178 (1966), ___________________________________ criminal acts of third parties sometimes can fall within the ambit of foreseeability. See Chapman, 803 F. Supp. at 573; Elba, ___ _______ ____ supra, slip op. at 23; Negron, 113 P.R.R. at 927-28; Estremera, _____ ______ _________ 109 P.R.R. at 1157 n.6. Accordingly, the issue we must decide is whether the facts and circumstances of this case permit a factfinder plausibly to infer a foreseeable risk of episodic violence. See Rivera Perez, supra, slip op. at 8 ("If the fault ___ ____________ _____ or negligence on which the liability of 1802 is predicated consists, pursuant to 1057, in the failure to be diligent 12 according to particular circumstances, . . . 1802 inevitably centers around the function of the person's foresight, as [the] controlling factor of [defendant's] liability. . . .") (quoting Rivera v. Maryland Cas. Co., 96 P.R.R. 788, 791 (1968)). ______ _________________ The magistrate concluded that violence was not reasonably foreseeable. Though he may, in the end, prove to be an accurate prophet as a matter of decided fact only a jury can answer that question definitively courts are constrained by Rule 56 to draw all reasonable inferences in the nonmovant's favor. See National Amusements, 43 F.3d at 735. On this basis, ___ ___________________ the current posture of the case demands that we reject the magistrate's conclusion as a matter of law. We explain briefly. Both parties place great weight upon the fact that Marrero drove to and from the airport three times on July 9, in the same red Ford, transporting other, earlier-arriving hotel guests without incident. Taber argues that, since the driver had traversed the route in safety on these previous occasions, it could not have foreseen the violent reception that awaited the plaintiff. Coyne parries this thrust by asserting that, in ordering Marrero to drive through the airport a fourth time in the same easily recognizable automobile, on the very sort of errand that prompted the strike, the hotel should have realized that it was tempting fate. In short, defendant uses the earlier trips as evidence that peril was not foreseeable, whereas plaintiff uses them not only as evidence of discernible danger but also to show that Taber's activity in fact catalyzed the 13 harm-producing event. Both of these scenarios are plausible from a factual standpoint. For present purposes, that ends the inquiry: when the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage. See, e.g., Greenburg ___ ____ _________ v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 937 (1st ____________________________________ Cir. 1987) (explaining that, if the evidence conflicts, "the ultimate arbiter of the persuasiveness of the proof must be the factfinder, not the lawgiver"). Taber has a fallback position. It argues that the incident was not foreseeable because it lacked knowledge of the strike's explosive nature. This, too, seems sufficiently factbound to warrant jury consideration. To be sure, the attack on the Ford may have been the first incident of its kind during the July strike but that happenstance is not dispositive. If a dog has vicious propensities, even the first bite may well be foreseeable. "It is no defense to allege that the precise course or the full extent of the consequences could not be foreseen, the consequences being of such kind, which in fact happened." Gines, _____ 86 P.R.R. at 496. Here, the strike was no secret. The strikers' propensities were fairly evident. The jury could find that the article in the San Juan Star furnished constructive notice of the _____________ 14 tense circumstances and the potential for violence.6 The plaintiff's observation of events at the airport before Marrero arrived lends some slight support to the inference that the rock- throwing incident was foreseeable. So does the evidence anent the driver's demeanor. Another piece of evidence is potentially significant. In opposing summary judgment, plaintiff submitted the affidavit of Capt. Hector Mercado Santini, a security consultant. Plaintiff's expert noted that violence commonly accompanies labor disputes in Puerto Rico and that this tendency is well known. He cited violent incidents that had occurred during earlier strikes at the airport (including strikes called by the taxi drivers' union). He expressed the opinion that Taber acted irresponsibly in thrice sending the same driver in the same car on the same errand on the same day across the picket line.7  ____________________ 6Taber argues that this article is hearsay evidence that should be excluded from consideration. This argument overlooks that plaintiff did not offer the article for the truth of the matter asserted, but, rather, as tending to establish that the hotel's management knew or should have known of the volatile nature of the labor protest. The proffer was admissible for this purpose. See, e.g., Price v. Rochford, 947 F.2d 829, 833 (7th ___ ____ _____ ________ Cir. 1991) (deeming newspaper articles admissible because plaintiff "did not offer the articles to prove that he was in bankruptcy, only that he was reported to have been in bankruptcy) ________ (emphasis in original); see generally Fed. R. Evid. 801(c) ___ _________ (defining hearsay as "a statement . . . offered in evidence to prove the truth of the matter asserted"). 7Citing Casas Office Machs., Inc. v. Mita Copystar, Inc., 42 _________________________ ___________________ F.3d 668 (1st Cir. 1994), Taber argues that the expert's affidavit should not be considered. This argument is unconvincing. In Casas, we confirmed that a district court had _____ discretion to exclude expert opinion testimony based on a speculative foundation. See id. at 681-83. Here, however, the ___ ___ lower court did not exclude the expert's affidavit. Indeed, it 15 These items of evidence, taken collectively, distinguish this case from Rivera Perez, supra, slip op. at 8 _____________ _____ (finding wife not liable for ex-husband's attack on house guest because she lacked knowledge of his criminal predisposition) and Estremera, 109 P.R.R. at 1158 (finding criminal attack would have _________ occurred regardless of whether defendant provided stairwell lighting), and make it more akin to Elba, supra, slip op. at 20 ____ _____ (concluding that circumstances made sexual assault of female student foreseeable because school officials had knowledge of high-risk rape area) and Negron, 113 P.R.R. at 928 (holding that ______ a reasonable person would have foreseen criminal act in police station, given the known presence of a violent individual). Taking the facts favorably to the plaintiff, we believe that a jury reasonably could find that plaintiff's injuries were a generally foreseeable consequence of Taber's decision repeatedly to shuttle guests between the airport and the hotel in the same distinctive private car, chauffeured by the same lone driver, at the height of the strike, without taking any particular security precautions. Put another way, the case at hand yields an issue of foreseeability upon which reasonable minds might differ. Summary judgment is, therefore, inappropriate. IV. CONCLUSION IV. CONCLUSION We need go no further. Viewing the evidence in the light most congenial to the plaintiff, a rational jury could find all the elements of a viable cause of action: duty, breach,  ____________________ never reached the issue. 16 causation, and foreseeable harm. Thus, the plaintiff is entitled to present her case at a full-dress trial. Reversed and remanded for further proceedings. Reversed and remanded for further proceedings. _____________________________________________ 17