896 F.Supp. 223 (1995)
Ramon-Santana PAREDES, Plaintiff,
v.
HILTON INTERNATIONAL OF PUERTO RICO; IL Giardino, Inc., X, Y, Z, Insurance Companies, Defendants,
v.
SUN ALLIANCE INSURANCE CO. OF PUERTO RICO, Third-Party Defendant.
Civ. No. 93-1002 (DRD).
United States District Court, D. Puerto Rico.
August 7, 1995.
Alberto J. Perez-Hernandez, Bernardo Vazquez-Santos, David Efron Law Offices, Rio Piedras, PR, for Ramon Santana-Paredes.
Carlos Martinez-Texidor, Ponce, PR, for Hilton International of Puerto Rico, Inc.
Luis A. Gonzalez-Perez, Garcia & Gonzalez, Hato Rey, PR, Demetrio Fernandez-Quinones, Vick Center, Rio Piedras, PR, for IL Giardino, Inc.
Il Giardino, Inc., Condado, PR, pro se.
Luis A. Gonzalez-Perez, Garcia & Gonzalez, Hato Rey, PR, for Sun Alliance Insurance Company.
*224 Carlos Martinez-Texidor, Ponce, PR, for Hilton International of Puerto Rico, Inc.
Vicente Santori-Coll, San Juan, PR, for Sun Alliance Insurance Company of Puerto Rico.

OPINION AND ORDER
DOMINGUEZ, District Judge.
Pending before the Court are two motions for Summary Judgement, one filed by the Third Party Defendant, and the other by the Third Party Plaintiff. Third Party Defendant Sun Alliance Insurance Co. of Puerto Rico, hereinafter referred to as "Sun Alliance", filed its summary judgement motion on December 20, 1993, docket 40. Co-Defendant/Third Party Plaintiff Hilton International of Puerto Rico Inc., hereinafter referred to as "Hilton", filed an opposition to Sun Alliance's Motion for Summary Judgement and Summary Judgement Motion, on January 18, 1994, docket 46; to which Sun Alliance replied and opposed on February 22, 1994, docket 49.

THE SUMMARY JUDGEMENT STANDARD
Both Plaintiffs and Defendants in their motions refer to documents (i.e., insurance contracts) outside the pleadings. Because the court shall consider these supplementary materials, the summary judgement standard is both apposite and opportune. See Garita Hotel Ltd. v. Ponce Federal Bank, 958 F.2d 15, 19 (1st Cir.1992)[1].
A district court may grant summary judgement when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact and the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c). See Eileen M. McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995), citing Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir.1995).
The intricacies and general standards of Rule 56, have been documented by the First Circuit Court in a "cascade of cases"[2]. "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial worthy issue exists." See Eileen McCarthy, Id. at 315, citing National Amusements, 43 F.3d at 735. At this crux, we need say no more than that summary judgement will proceed if the record, even when taken in aspect most favorable to the nonmoving party, fails to yield a trial worthy issue as to some material fact[3]. See Coyne, Id. at 457.
A material fact is one that might affect the outcome of the suit under the governing law. *225 "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." Medina-Muñoz, 896 F.2d at 8 (emphasis in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510). See also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir.1994). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
Hence, in applying these criteria, the Court is to consider that "not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." Wilfredo Martinez v. Rafael Colon, 54 F.3d 980, 983 (1st Cir.1995), citing United States v. One Parcel of Real Property, 960 F.2d at 204.
Because in the instant case, the record presents matters which are contested and disputed, our germane duty is then to ascertain their genuineness and materiality.
Consistent with the summary judgement standard, "we canvass the material facts in a light that flatters, but does not impermissibly distort", the nonmoving party's claims, and indulge all inferences in favor of that party[4].

FACTUAL BACKGROUND
This is an action for tort and money damages for an accident which allegedly occurred in an elevator at the Caribe Hilton Hotel in San Juan Puerto Rico, on January 7, 1992. Plaintiff Ramon Santana-Paredes is a citizen and resident of the State of New Jersey. Co-Defendant Sun Alliance issued a personal injury liability policy entitled "COMMERCIAL GENERAL LIABILITY COVERAGE", covering II Giardino Restaurant, a concession restaurant located within the premises of the Caribe Hilton Hotel. Co-Defendant Hilton operates a tourist hotel in San Juan, Puerto Rico. Hilton has American International Insurance Co. as its primary insurance carrier[5]. Third Party Defendant Sun Alliance[6] filed the motion for summary judgement based on lack of coverage under its insurance policy for the claims filed against Co-Defendants Hilton[7] and Il Giardino[8].

THE ACCIDENT
The following facts remain uncontested. On January 7, 1992, Plaintiff Ramon Santana Paredes worked as a kitchen assistant for Il Giardino restaurant. On said date Plaintiff suffered an accident inside the Hotel's service elevator, while taking out Il Giardino's garbage[9]. As a result of the accident, Plaintiff sustained injuries for which he received medical attention at the Ashford Presbyterian Community Hospital. It further remains uncontested that the accident suffered by Plaintiff was not covered under any Puerto Rico State Insurance Fund policy issued to Il *226 Giardino[10]. Hilton was responsible for the maintenance and repairs of the service elevator where the accident occurred, for which Otis Elevator Company was subcontracted by Hilton.[11]
Plaintiff's liability action against Hilton and Giardino is based on the following allegations stated on the Complaint. (See docket 1, page 2, paragraphs 5 through 9):
"Plaintiff was a cook's assistant at Il Giardino Restaurant. On January 7, 1992, at about 2:45 P.M. he was sent to throw away garbage which had accumulated in the restaurant. For this purpose, the Defendant Caribe Hilton of Puerto Rico, provides an elevator to all the restaurants located on the premises.
The elevator is the type which has horizontal closing doors, and closes when a strap, located at the top, is pulled downward forcing the doors to close. On the day of the accident, Plaintiff along with Tony "Doe" brought the garbage into the elevator and Plaintiff proceeded to pull the strap to close the elevator doors.
Unbeknown to plaintiff, grease had accumulated on the elevator floor, so when he pulled the strap his feet slipped from under him and his head was crushed as the elevator doors closed.
The negligence of Co-Defendant Caribe Hilton, in not maintaining a safe freight elevator or in providing a freight elevator which requires the type of effort used by Plaintiff to close the doors, and the negligence of Co-Defendant, Il Giardino Restaurant, in sending Plaintiff into an unsafe and hazardous situation were the cause of the physical and mental loss suffered by Plaintiff. Neither of the Defendants had a Workmen's Compensation insurance policy to cover for the damages suffered by Plaintiff.
The elevator doors in crushing Ramon Santana's head resulted in multiple fractures of the bilateral orbital roof, left anterior maxillary antrum, floor of the sella turica, right frontal bone in two parts (one near the midline at the level of the frontal sinus and one more laterally), right lamina papyracea, and floor of the right orbit, as well as extensive pneumocephalus. Plaintiff had impaired vision for several weeks, and suffered from headaches. He remained in the hospital for two days and was sent home to convalesce."
In its Motion in Opposition to Summary Judgement and Summary Judgement Motion, Hilton International, presents a different version of the facts pertaining to the accident. Hilton specifically purports that during the process of discovery, particularly through Mr. Clemente Rodriguez Vazquez's[12] written statement and deposition, a substantially dissimilar predicament took place.
In March 12, 1993 a written statement was taken to Mr. Clemente Rodriguez Vazquez, which constitutes Exhibit C of Hilton's Motion, docket 46. Said statements provides in pertinent part as follows:
"In January 7, 1992, I was in front of our employees' cafeteria.... Employees of Il Giardino were moving garbage in drums with wheels.... Two of Il Giardino's employees entered the cargo elevator and suddenly I heard someone saying "You are going to kill me" and these two employees came outside from the elevator to the hall. One of them was hurt. At that moment the exterior elevator door was opening. These elevators have two doors. The inside door is a safety door and if this one is not closed the elevator will not operate. The correct way to operate it is by closing the exterior door first and then the safety door ... The employee who was hurt told me at my office, where I took him immediately after the accident to treat his injury, that when he was closing the exterior elevator door the other Il Giardino's employee was closing the elevator door and the accident occurred." (Translation theirs)
*227 Mr. Rodriguez was deposed by Plaintiff in May 19, 1993. Hilton encloses said deposition as Exhibit D which provides:
"I was in front of the elevator at about eight to ten feet when two Il Giardino's employees entered the elevator. I saw when the exterior elevator door closed and suddenly I heard from inside the elevator a person that yelled "You are going to kill me". The exterior elevator's doors opened and these two persons came out from the elevator. One of them was bleeding. I took him to my office since I have a first-aid kit. I called Hilton's security and Il Giardino's supervisors. Two of Il Giardino's supervisors went to my office. There, these two employees told their supervisors, in my presence what occurred. The injured one told his supervisor that when he was closing the exterior elevator's door the other employee began to close the interior door and hit his head ... There was no grease at the elevator floor..... This elevator is used by Il Giardino to carry the garbage from their restaurant to an area where it is disposed of in a garbage tank or container.... Il Giardino's employees in charge of the restaurant's collection and disposal of garbage use this facility to carry the garbage out. They use said facilities for said purposes ..." (Translation theirs)
Defendants deposed Ramon Santana-Paredes, the Plaintiff, on September 8, 1993. Hilton encloses said deposition in Spanish as Exhibit E, which on page 57 provides the following in pertinent part:
"I do not remember who first entered the elevator, if it was me or my fellow employee ... We were to dispose of the garbage. Each one of us was carrying a drum with wheels. We knew where we were going. My fellow employee was inside the elevator when I was closing the outside door.... I was not closing the inside door because I was hurt by the outside door. This outside door was the one which hit me. My head was between the upper side and the lower side of the outside elevator's door.... I was injured in my left frontal side and in the right side of my face. I was using my two hands to lower the upper side of the exterior door when the accident occurred. While doing this, I slipped and I was caught between the upper and lower doors of the exterior door. When I slipped, my two hands were being used to lower the upper side of the exterior door.... When this occurred I yelled "Me mate".
Right after the accident I saw Mr. Clemente Rodriguez. He took me to his office and cared for me because I was injured.... I was bleeding.... Mr. Clemente Rodriguez gave me first aid. Some kind of liquid was used by him and gauze was applied.... My kitchen supervisor arrived at Mr. Clemente Rodriguez's offices. I told him what had occurred. I also told Mr. Clemente Rodriguez what happened. When I was entering the elevator I looked and nothing abnormal was there." (Translation theirs)
As evidenced by the statements presented hereinabove, there are two versions of how the accident occurred[13]. Plaintiff's version relates that Plaintiff Ramon Santana Paredes slipped in the elevator while closing the exterior door. Hilton alleges that "His version has not been confirmed by anybody. His fellow employees were not totally identified by Plaintiff nor by any other person and his whereabouts are unknown." (Docket 46, p. 9)
The second version is that of Mr. Clemente Rodriguez Vazquez, which relates that while Plaintiff was closing the exterior door of the elevator, his fellow employee was closing the inside door and he was hit by the inside door. This version has been partially confirmed by the Plaintiff, when he admitted in his deposition that immediately following the accident, he was taken by Mr. Clemente Rodriguez Vazquez to his office, wherein he received first-aid care and wherein he described the accident to his supervisors and to Mr. Rodriguez Vazquez.
*228 Hence, the way in which the accident occurred, and whether the accident suffered by Plaintiff was caused by any condition related to the service elevator remains a contested material fact. Furthermore, whether the accident suffered by plaintiff was caused by his own negligence, fault, intentional acts, by the negligence or fault of a fellow employee, by the negligence of Il Giardino, or Hilton, or by any other person, also remains controverted.
We conclude that the evidence of record in this case is "sufficiently open-ended to permit a rational fact finder to resolve the [liability] issue in favor of either side." See Coyne, at 457, citing National Amusements, 43 F.3d at 735. "Both of these scenarios are plausible from a factual standpoint. For present purposes, that ends the inquiry: when the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage[14]". Thus, the court proceeds no further on this inquest and hereby entitles the Plaintiff to present his case at full-dress trial.
Notwithstanding, the court must determine another matter pending adjudication, which concerns the insurance policy contract provided by Sun Alliance Insurance Co. of Puerto Rico, and the degree of potential coverage applicable to the facts in the instant case.
DOES THE POLICY ISSUED BY SUN ALLIANCE INSURANCE CO. COVER THE ALLEGATIONS OF THE COMPLAINT AND THE FACTS UPON WHICH THE CLAIM FILED BY PLAINTIFF IS PREDICATED?
Hilton executed a concession agreement with Giardino on April 10, 1991, for the purposes of having the latter establish an Italian Restaurant at the Caribe Hilton and Casino Hotel. (See CONCESSION AGREEMENT, which includes a part entitled "General Conditions", docket 40, exhibit A). The obligation of Il Giardino to indemnify and hold Hilton harmless of any liability claim, and as to Giardino's obligation to secure and maintain insurance coverage for said obligation to indemnify is contemplated under paragraph thirteen of the GENERAL CONDITIONS which in pertinent part provides:
"Concessionaire shall defend, indemnify and hold harmless Grantor, any of its officers, directors, and affiliated interests with respect to any and all claims for death, injury, loss or damage of any kind or character from any cause whatsoever, suffered or sustained by visitors, customers, agents, or employees of Concessionaire, or damage to property, arising out of operations conducted by Concessionaires under this Agreement (whether occurring on or off the Hotel premises), except when such claims are due to Grantor's negligence, and shall secure and maintain insurance coverage in such amounts as Grantor may from time to time specify. (Emphasis theirs)
In order to fulfill Giardino's obligation to indemnify Hilton under the above paragraph thirteen of the General Conditions, the following was stipulated under paragraph seventeen of that part of the document denominated "Concession Agreement", which provides the following:
"17. Insurance. For purposes of paragraph 13 of the General Conditions hereto, Concessionaire shall secure and maintain insurance coverage of not less than one million dollars ($1,000,000) for property damage. Grantor shall be named as an additional insured in Concessionaire's personal; injury and property damage insurance policies, which policies shall include an endorsement to the effect that such policies may only be canceled or amended upon thirty (30) days prior written notice to Grantor. Concessionaire shall produce evidence of insurance as required by this section 17 prior to the commencement of the term of this lease." (See docket 40, Exhibit A, "CONCESSION AGREEMENT", pp. 8-9)
The dispositions contained on paragraph thirteen apply to Giardino's obligation to indemnify Hilton for any damages caused by *229 Giardino's own negligence. This disposition however, does not include an obligation, on the part of Giardino, to indemnify when the damages are caused by Hilton's negligence.
Sun Alliance purports that further analysis of the Concession Agreement leads to the conclusion that the elevator, where the alleged accident occurred, is not included "among the premises and appurtenances described and to which the Agreement applied". Sun Alliance further states that "Said elevator was a mere facility provided by Hilton to Giardino as well as to other concessionaires at the Caribe Hilton Hotel. The duty to provide repairs and maintenance to this elevator fell exclusively on Hilton, as the entity in complete control of the elevator." (See docket 40, p. 7, and Pretrial Order, docket 64, p. 13).
The duty to keep business premises "reasonably safe" is a "nondelegable principle". See Colmenares Vivas v. Sun Alliance Ins. Co., 807 F.2d 1102, 1107 (1st Cir.1986), citing Restatement (Second) of Torts § 344 (1965). The duty of a lessor regarding common areas has been postulated by the Supreme Court of Puerto Rico in a myriad of cases, commencing with Santaella Negron v. Licari, 83 D.P.R. 887, 892 (1961), and its progeny[15].
"It is a well established general principle and uniformly followed by case law that when a building has various apartments or units and these are leased to different tenants, the entrances, lobbies, stairs, and corridors of common use remain, unless otherwise agreed to, in the possession and under the control of the lessor, and consequently the responsibility for its condition and security rests upon him. The lessor has the duty to see that the facilities of common use are in conditions that offer security to the tenants as well as to the persons who legitimately have access to the building ..." (Translation theirs)
Hence, Hilton (the lessor) had the exclusive nondelegable duty to keep and maintain its business premises (the elevator) in a safe condition.
Is Co-Defendant Il Giardino covered under the COMMERCIAL GENERAL LIABILITY COVERAGE insurance policy issued by Sun Alliance?
"Sun Alliance" alleges that on January 7, 1992, the time of the accident, it had issued an insurance policy covering Giardino's liability under that part of the policy denominated "COMMERCIAL GENERAL LIABILITY COVERAGE" with effective dates from 11-28-91 to 11-28-94. To this Commercial General Liability Coverage part, endorsement CG-2011 was added, effective February 5, 1992 (after the accident alleged in the complaint), including Caribe Hilton Hotel and Casino Hilton International of Puerto Rico, Inc., and PRIDCO as additional insured. (See INSURANCE POLICY CPP-001413, docket 40, pp. 10 and 11 marked as Exhibit B).
In addition the aforesaid insurance policy contained an "EMPLOYER'S LIABILITY STOP-GAP COVERAGE ENDORSEMENT", which was in effect at the time of the accident and provided in pertinent part as follows:
"It is agreed that such insurance as is afforded by the policy with respect to Bodily Injury Liability applies also to the liability of the insured for damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained by any employee of the insured arising out of and in the course of his employment by the insured in a state named below, or in operation necessary or incidental thereto, subject to the following provisions:
1. A. "The insurance applies only provided the insured (1) has, where required, filed acceptance of the Workmen's Compensation Laws of.................. and will not file notice of rejection of the provisions of such laws during the policy period, (2) has insured all employees required to be *230 insured under said law(s), and (3) duly reports all payrolls and pays all premiums due thereunder."
It remains an undisputed fact that Giardino did not insure his employees in accordance with the applicable WORKMEN'S COMPENSATION LAW OF PUERTO RICO. Sun Alliance alleges that because Giardino did not comply with the contractual provision stated hereinabove, Giardino had no coverage under Sun Alliance's policy, for the claim filed by Plaintiff, for damages arising out of and in the course of Plaintiff's employment with Giardino.
The court agrees. Due to Il Giardino's failure to obtain Workmen's Compensation, which as stated hereinabove, is a necessary requirement in order to obtain said coverage, Sun Alliance's policy does not cover the claim contained in the Complaint filed against Il Giardino.

Is Hilton covered, as an additional insured, in the insurance policy issued by Sun Alliance?
Sun Alliance alleges that Hilton's claim, as being an additional insured under Sun Alliance's COMMERCIAL GENERAL LIABILITY COVERAGE PLAN, through endorsement CG-2011 effective February 5, 1992 is incorrect. (see paragraph 3 of the Third Party Complaint, Docket # 33) Sun Alliance purports that the endorsement to the policy, making Hilton an additional insured, became effective after the accident of January 7, 1992. Sun Alliance further alleges that there is no policy language providing coverage for Hilton's negligence. As specifically stated in paragraph 13 of the GENERAL CONDITIONS OF THE CONCESSION AGREEMENT (Docket # 40, Exhibit A and Docket # 46 Exhibit F) executed between Il Giardino and Hilton, Giardino had no obligation to indemnify when the damages were caused by Hilton's negligence. Hence, if the court determines that the accident was due to Hilton's negligence, Il Giardino has no obligation to indemnify Hilton under THE CONCESSION AGREEMENT effected between Il Giardino and Hilton.
Lastly, Sun Alliance alleges that the elevator where the accident occurred was used by various concessionaires and hotel employees and was under the exclusive control of Hilton. Sun alliance further purports that said elevator is not included in the description of the premises being insured by Sun Alliance's policy on behalf of Il Giardino.
Co-Defendant/Third Party Plaintiff "Hilton" filed an opposition to Sun Alliance's Motion for Summary Judgement and Summary Judgement Motion. (See Docket # 46). Hilton alleges that Sun Alliance's position regarding the coverage interpretation of the policy has been inconsistent and varied from one letter to another, in a three month period. (See Docket # 46 pp. 3 and 4).
Hilton further states that whether the accident occurred on or off the restaurant, in itself is not important, since Sun Alliance admits the existence of the Agreement between Il Giardino and Hilton, whereby Il Giardino saved and hold-harmless Hilton for claims from employees of Il Giardino on or off the Hotel premises. (emphasis theirs).
Hilton further purports that the insurance policy covers its claim for indemnification because, although the certificate was issued on February 5, 1992, its effectiveness is retroactive to the inception date of the policy (November 28, 1991) namely, before the accident occurred.
Hilton further claims that the contract between Il Giardino and Hilton is an "insured contract" which affords protection and indemnification to Hilton because in it, Il Giardino assumed Hilton's liability to pay for bodily injury or property damage to a third party, which in this case is the Plaintiff. (See Docket # 46 p. 15).
Sun Alliance filed a Reply to Hilton's Opposition to Sun Alliance's Motion for Summary Judgement and Opposition to Hilton's Motion for Summary Judgement. (Docket # 49). Sun Alliance claims that the language contained in its insurance policy, relating to the relationship between Hilton and Il Giardino, specifically does not extend to Hilton's direct liability under the "hold harmless agreement", but only to its vicarious liability. That is, whatever liability may be imposed on *231 Hilton due to Il Giardino's direct negligence[16]. (See Docket # 49, p. 2).
Hence, according to Sun Alliance, the only issue in controversy between Hilton and Sun Alliance is whether there is a claim for vicarious liability against Hilton, that has coverage under Sun Alliance's policy, based on the hold harmless agreement. This issue of Sun Alliance's mandatory insurance coverage, under potential vicarious liability, resulting from Giardino's negligence, remains uncontested.
"On the other hand, there is no policy language providing coverage for Hilton's negligence. As a matter of fact, it is clearly in the Concession Agreement executed between Giardino and Hilton that the insurance to be procured by Giardino was for the purpose of complying with the requirement of paragraph 13 of the General Conditions, which contained an obligation on the part of Giardino to indemnify Hilton for any damages caused by Giardino's own negligence. However, as specifically stated in said paragraph 13 of the General Conditions, Giardino had no obligation to indemnify when the damages were caused by Hilton's negligence. Thus, if the intention of the parties to the Concession Agreement was to procure insurance for the sole purpose of protecting Hilton's vicarious liability (based on Giardino's negligence), then it follows that at best Sun Alliance's insurance policy was issued for that same purpose. It is also evident from examining the Concession Agreement that the premises and appurtenances described, and to which the Agreement applied, does not in any way include the elevator where the accident occurred. Said elevator was a mere facility provided by Hilton to Giardino as well as to other concessionaires at the Caribe Hilton Hotel. The duty to provide repairs and maintenance to this elevator fell exclusively on Hilton, as the entity in complete control of the elevator." (Emphasis ours) (See Docket 40, p. 7)
Sun Alliance alleges that there is no indication in its policy to the effect that the endorsement making Hilton an additional insured under the policy was to apply retroactively. The court agrees, said endorsement can not apply retroactively to cover the loss that had already occurred and that is the object of this suit.
"As a general rule, the risk under a policy or contract of insurance attaches as of the time actually agreed upon or understood by the parties. Unless it is otherwise stated or a contrary intention is shown, a completed contract of insurance is deemed to be made as of its date, and to take effect therefrom." 43 Am.Jur.2d § 230.
Furthermore, Sun Alliance purports that the additional insured endorsement does not cover the elevator, where the alleged accident occurred, since it is not part of the leased premises.
The Court agrees with Sun Alliance's position that its policy does not cover Hilton's direct liability under the "hold harmless agreement" existing between Hilton and Il Giardino which in pertinent part provides:
"Concessionaires shall defend, indemnify and hold harmless Grantor, any of its officers, directors, and affiliated with respect to any and all claims for death, injury, loss or damage of any kind or character from any cause whatsoever, suffered or sustained by visitors, customers, agents or employees of Concessionaire under this agreement (whether occurring on or off the Hotel premises), except when such claims are due to Grantor's negligence, and shall secure and maintain insurance coverage in such amounts as Grantor may from time to time specify." (emphasis theirs)[17]
The inquiry does not stop here. As previously stated, if the accident was not caused by Hilton's direct liability, but by Hilton's *232 vicarious liability in relation to Giardino's negligence, then Sun Alliance shall provide Hilton with insurance coverage, in accordance with the provisions contained in the policy contract effected between them.
Hence, whether or not Sun Alliance is to provide Hilton with insurance coverage, is subject to which version of the accident prevails in the mind of the trier of facts. The version of facts wherein the accident may have been caused by the co-workers of Giardino, presents a vicarious liability for Hilton. The economic benefit present in the relationship binding Hilton and Giardino, or the benefit derived by Hilton from Giardino's employees, by virtue of the Concessionaire Agreement effected between them, makes Hilton (the principal) liable for the actions of Giardino (independent contractor). See Martinez v. Chase Manhattan Bank, 108 D.P.R. 515 (1979), Lopez v. Cruz Ruiz, 92 J.T.S. 130 (1992), Rivera v. Flav-O-Rich, 876 F.Supp. 373, 383 (D.Puerto Rico 1995). Sun Alliance could therefore, have to provide potential coverage of Hilton under vicarious liability theories.
However, the allegations contained in the Complaint are specific allegations of direct negligence against Hilton. (See docket 1) Sun Alliance states that there are no allegations of vicarious liability in the Complaint. (See docket 49, p. 2) The Court agrees.
As stated hereinabove, the "hold harmless clause" contained on paragraph thirteen of the GENERAL CONDITIONS, Sun Alliance's policy does not cover Hilton's direct negligence. According to the Law of Puerto Rico, the duty and responsibilities of insurers to extend coverage and defense are determined principally by the allegations in the Complaint. See Fernandez v. Royal Indemnity Co., 87 D.P.R. 859 (1963); Vega Arriaga v. Pepsi-Cola Bottling Co., 118 D.P.R. 661 (1987); Morales Garay v. Rodan Coss, 110 D.P.R. 701, (1981); Pagan Caraballo v. Silva Delgado, 88 J.T.S. 92 (June 30, 1988). Because the Complaint filed against Hilton does not contain vicarious liability allegations, but only allegations as to Hilton's direct acts of negligence, Sun Alliance does not have to extend coverage or provide a defense for Hilton.
Courts should avoid hyper technicality in pleading requirements and focus instead on the purpose of pleading rules. Hassan v. U.S. Postal Service, 842 F.2d 260, 263 (11th Cir.1988); Allied Chemical Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir.1983); Polles v. Federal Deposit Ins. Corp., 749 F.Supp. 136, 138-39 (N.D.Miss.1990). In lieu of the advanced timetable of this case, and the tardiness of a possible amendment to the allegations[18], Hilton's assertions of insurance coverage and representation, under Sun Alliance's policy, by virtue of vicarious liability, is inauspicious and unpunctual.
Hence, for the reasons stated hereinabove, Sun Alliance's policy does not cover the claim filed against Il Giardino for the latter's failure to obtain Workmen's Compensation, and it does not cover the claim filed against Hilton because it is not based on Hilton's vicarious liability.

CONCLUSION
Accordingly, The Court, upon due deliberation, having found that Third Party Plaintiff Hilton International of Puerto Rico, Inc. has failed to state a cognizable claim against Third Party Defendant, Sun Alliance Insurance Co. of Puerto Rico, hereby GRANTS Third Party Defendant Sun Alliance Insurance Co. of Puerto Rico's motion for summary judgement, docket 40, and DENIES Third Party Plaintiff Hilton International of Puerto Rico, Inc.'s motion for summary judgement, docket 46.
IT IS SO ORDERED.
NOTES
[1] "[T]he test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision". See Garita, Id.
[2] See Coyne v. Taber Partners, Id.; Lydia Libertad, et al. v. Father Patrick Welch, et al., 53 F.3d 428, 433 (1st Cir.1995); National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995), cert. denied, ___ U.S. ___, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir.1993); Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993); United States v. One Parcel of Real Property (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir.1992); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 351-52 (1st Cir.1992); Griggs-Ryan v. Smith, 904 F.2d 112, 115-16 (1st Cir.1990); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7-8 (1st Cir.1990); Garside v. Osco Drug, Inc., 895 F.2d 46, 48-49 (1st Cir.1990).
[3] Essentially, Rule 56(c) mandates the entry of summary judgement "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (Emphasis ours) Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. at 2554. The burden of production then shifts to the nonmovant, who, to avoid summary judgement, must establish the existence of at least one question of fact that is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202 (1986), (citations omitted). The nonmovant, however, may not rest upon mere denial of the pleadings. Fed.R.Civ.P. 56. See Richard A. Mottolo and Service Pumping & Drain Co., Inc. v. Fireman's Fund Insurance Company, et al., 43 F.3d 723, 725 (1st Cir.1995).
[4] See Wilfredo Martinez v. Rafael Colon, Id. at 982; LeBlanc v. Great American Insurance, 6 F.3d 836, 841 (1st Cir.1993) cert. denied ___ U.S. ___, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); Richard A. Mottolo and Service Pumping and Drain Co., Inc. v. Fireman's Fund Insurance Co., et al. Id. at 725; Lydia Libertad, et al. v. Patrick Welch, et al., 53 F.3d 428 (1st Cir.1995).
[5] "At the time of the accident, Hilton was insured with American International Insurance Co., who is providing Hilton with coverage and defense in this case." See Pretrial Order, docket 64, p. 13.
[6] Sun Alliance Insurance Co. of Puerto Rico, Inc. is a corporation organized under the laws of the State of Delaware, with principal place of business in the State of New York.
[7] Hilton International of Puerto Rico, Inc. ("Hilton") is a Delaware Corporation with its principal place of business located in Puerto Rico.
[8] Il Giardino Inc., is a corporation organized under the laws of the Commonwealth of Puerto Rico, where it also has its principal place of business. Il Giardino operates a restaurant on the second floor of the Caribe Hilton Hotel, under a Concession Agreement with Hilton dated April 10, 1991.
[9] Mr. Santana's duties as kitchen assistant included the removal of Il Giardino's garbage cans, taking them to the ground floor in the hotel's trash bin.
[10] Il Giardino did not have a Puerto Rico State Insurance Fund Policy in effect as of January 7, 1992.
[11] See discussion, infra.
[12] Mr. Clemente Rodriguez Vazquez was Hilton's Chief Steward at the time of the accident.
[13] Two versions of fact strongly suggest a genuine material fact issue to be resolved by the jury. See Coyne v. Taber Partners. Id.
[14] See Coyne, at 460, citing Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 937 (1st Cir.1987) (explaining that, if the evidence conflicts, "the ultimate arbiter of the persuasiveness of the proof must be the fact finder, not the lawgiver").
[15] The following Supreme Court cases reiterate in pari materia the obligation of the lessor in possession and control of the leased area (elevator) to properly keep and maintain it in a safe condition for those persons using it: Collazo v. The Shell Co. (P.R.), Ltd., 110 D.P.R. 327, 332 (1980); Corchado v. Fernandez Caraballo, 88 D.P.R. 100, 106-107 (1963); Soc. Gananciales v. G. Padin Co., Inc., 117 D.P.R. 94, 104-105 (1986).
[16] Sun Alliance states that Hilton's direct liability shall be covered by its insurance carrier, American International Insurance Co, who is extending coverage and defense to Hilton International. Hence, American International is Hilton's only insurer regarding the allegations stated in the Complaint against Hilton, since the "hold harmless agreement" does not apply to a claim based on Hilton's negligence.
[17] See docket 49, Exhibit A.
[18] A motion under Rule 15 is addressed to the sound discretion of the Court and must be decided upon the facts and circumstances of each particular case. See Johnson v. Sales Consultants, Inc., 61 F.R.D. 369, 371 (N.D.Ill.1973). "A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time ... [a]n amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action." Wright and Miller Vol. 6 § 1488 pp. 659-662. (2nd Ed.1990).