**Edna RODRÍGUEZ–SURÍS,
et al., Plaintiffs,**

v.

**Bertha MONTESINOS, et al., Defendants.**

**Civil Nos. 93–2236 (DRD),
93–2237 to 93–2239.**

United States District Court,
D. Puerto Rico.

Aug. 19, 1996.

Luz I. Gonzalez–Turull, San Juan, PR, Kevin G. Little, David Efron Law Offices, Rio Piedras, PR, Raymond P. Burgos–Santiago, Pinto–Lugo & Rivera, Old San Juan, PR, for Edna Rodríguez–Surís, Rafael Padilla–Rojas.

Kevin G. Little, David Efron Law Offices, Rio Piedras, PR, for all plaintiffs.

Luz I. Gonzalez–Turull, San Juan, PR, Kevin G. Little, David Efron Law Offices, Rio Piedras, PR, Juan R. Zalduondo–Viera, Hato Rey, PR, Harold D. Vicente–Gonzalez, Vicente & Cuevas, Fernandez Juncos Sta, Santurce, PR, for Vanessa Fernández, Juan R. Fernández, Conjugal Partnership Fernández–Fernández, María R. Gonzalez De Cortes, Rafael Cortes–Dapena, Conjugal Partnership Cortes–González, Annette P. Pedreira, Walter M. Pedreira, Conjugal Partnership Pedreira–Pedreira.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Bertha Montesinos.

## *OPINION AND ORDER*

DOMINGUEZ, District Judge.

In this diversity tort action, co-defendant Collagen Corporation[1] ("Collagen") filed a motion for summary judgment (Docket # 55) in which Collagen argues that: 1) plaintiffs' claims against Collagen are preempted by the Medical Device Amendments to the Food, Drug and Cosmetics Act of 1976 ("MDA"), 21 U.S.C. § 360k; 2) plaintiffs' damages were caused by an unforeseeable misuse of Collagen's product by co-defendant

---

**1.** Collagen Corporation, is incorporated under the laws of the State of Delaware, with its principal place of business at 2500 Faber Place, Palo Alto, California.

Bertha Montesinos[2] ("Montesinos") for which Collagen cannot be held liable; and 3) plaintiffs' complaints are time-barred by the statute of limitations. Plaintiffs filed an opposition (Docket # 62) to Collagen's motion, to which Collagen replied (Docket # 67).

Collagen had previously filed a motion for summary judgment (Docket # 11) on June 28, 1994, petitioning the Court to decide the identical preemption argument as presented in this motion. The Court denied the motion on August 9, 1994 (Docket # 20).[3] Because the one-year limitation term expired prior to the time plaintiffs filed the instant action, the Court now **grants** Collagen's motion for summary judgment denying plaintiffs' claims as time-barred. Further, because the claims against Montesinos appear to be equally vulnerable to the statute of limitations defense, the Court hereby **grants** plaintiffs **twenty (20) days, which term will expire on September 10, 1996,** to show cause why the Court should not grant summary judgment in favor of Montesinos on the grounds that all of the plaintiffs' claims against her are also time-barred.

## I—BACKGROUND

Collagen manufactures and distributes products made from a purified form of bovine (cow) collagen developed in the early seventies by a group of biochemists and physicians at Stanford University. Collagen is a natural protein found throughout the body which provides support for skin, muscle, tendons and bone tissues. Fibers of collagen are woven together like threads in a fabric to form a framework into which new cells may grow. Due to the similarities between the collagen in cows and that found in human skin, bovine collagen has been used in various medical applications such as sutures and

heart valves. Two of Collagen's bovine collagen products, Zyderm and Zyplast, are injected under the skin to correct or improve soft tissue deficiencies that may have arisen in the human body. Zyderm and Zyplast are regulated under the MDA, pursuant to which Congress granted the Food and Drug Administration ("FDA") regulatory authority over medical devices.[4] 21 U.S.C. § 360c–l. By its terms, the MDA applies solely to medical devices, not to drugs, cosmetics, or foods. *Id.* Zyderm, Zyderm Implant II, and Zyplast are classified as class III medical devices by the FDA. 21 U.S.C. § 360c(a)(1)(C). These devices require FDA approval and may only be sold to and used by trained and approved physicians. 21 U.S.C. § 360c-j. By June 1985, Collagen had received FDA approval to market Zyderm, Zyderm Implant II, and Zyplast. During 1991 and 1992, the FDA conducted another review of Collagen's premarket approval application ("PMA") to assess the adequacy of the safety and effectiveness of the information therein, as well as the appropriateness of the FDA approval decision. 21 U.S.C. § 360c(a)(1). After a thorough review, the FDA concluded that its initial approval of the Zyderm PMA was appropriate.

Between the months of July and November of 1989, plaintiffs,[5] separately and independently, went to Montesinos' apartment located at 1367 Wilson St., Santurce, Puerto Rico, where Montesinos administered the collagen injections, which are the subject of this action. Montesinos is not a licensed physician and represented herself as a cosmetologist. The only material Montesinos admits injecting into the plaintiffs is Zyderm which she obtained from a licensed physician in Miami, Doctor Mario Aguado, without Colla-

---

2. Barbara Bertha Montesinos–Valdés, is domiciled in Florida and conducts business in Florida, as well as in Santurce, Puerto Rico.

3. The recent Supreme Court decision, *Medtronic, Inc. v. Lohr*, — U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), dispels any doubt that Collagen's preemption argument was properly denied when this Court disallowed Collagen's motion for summary judgment.

4. Collagen markets a third kind of collagen product, Zyderm Implant II, which was approved

through the substantially similar provision within the MDA. 21 U.S.C. § 360c(f), c(i), j(*l*).

5. Edna Rodríguez–Surís de Padilla, Civil No. 93–2236, Vanessa Pérez de Fernández, Civil No. 93–2237, María Rosa González San Juan de Cortés, Civil No. 93–2238, and Annette Pérez de Pedreira, 93–2239 are all residents and citizens of Puerto Rico. Their cases were consolidated into the proceeding herein (Docket # 4).

gen's knowledge or authorization.[6] (Docket # 62 Exh. 3 p. 21, Montesinos' deposition). After receiving their respective injections, each of the plaintiffs developed hard nodules, reddish in color, at the sites of the injections. Montesinos told the plaintiffs that the irritation and nodules were temporary and would eventually disappear. On the contrary, the nodules persisted and remained hard. Consequently, this action was filed against Montesinos and Collagen on September 1, 1993, almost four (4) years after plaintiffs' received their injuring injection.

## II—ANALYSIS

### A. THE SUMMARY JUDGMENT STANDARD

■ Both plaintiffs and defendants in their motions refer to documents (i.e., depositions, medical reports, letters, etc.) outside the pleadings. Because the Court shall consider these supplementary materials, the summary judgment standard is the appropriate standard. *See Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 19 (1st Cir.1992).[7]

■ A district court may grant summary judgment when the requisite documents that possess evidentiary force "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995), (citing *Coyne v. Taber Partners I*, 53 F.3d 454, 457–58 (1st Cir.1995)). The intricacies

and general standards of Rule 56 have been documented by the First Circuit Court of Appeals in a "cascade of cases."[8] "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial worthy issue exists." *McCarthy*, 56 F.3d at 315 (citing *National Amusements*, 43 F.3d at 735). "In applying these criteria, we recognize that 'genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever pererrations catch a litigant's fancy.'" *See Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1996) (citing *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996)).

■ A material fact is one that might affect the outcome of the suit under the governing law. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Medina–Muñoz*, 896 F.2d at 8 (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Hence, in applying these criteria, the Court is to consider that "not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the poten-

---

6. The record shows Collagen never sold any collagen materials to Montesinos, and Collagen has never trained or authorized Montesinos to administer any of its products. However, Collagen did have an agreement with Dr. Aguado and did supply materials to him. The agreement stipulates that such materials are to be administered and used in treatment only by Dr. Aguado. The Court also notes that Montesinos admitted to injecting one of her twenty (20) patients with Zyderm II on one occasion, but could not recall to whom she administered the injection. (Docket # 62 Exh. 3 p. 70, Montesinos' deposition).

7. "[T]he test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision". *Id.* at 19.

8. *See Coyne* 53 F.3d at 457–58; *Libertad v. Welch*, 53 F.3d 428 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied*, ── U.S. ──, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993); *United States v. Plat 20, Lot 17*, 960 F.2d 200, 204 (1st Cir.1992); *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 351–52 (1st Cir.1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115–16 (1st Cir. 1990); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 7–8 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48–49 (1st Cir. 1990).

tial to change the outcome of the suit under the governing law, if found favorably to the nonmovant, that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 984 (1st Cir.1995) (citing *United States v. Plat 20, Lot 17,* 960 F.2d at 204). At this juncture, we need not say more than summary judgment will proceed if the record, even when taken in the aspect most favorable to the nonmoving party, fails to yield a trial-worthy issue as to some material fact.[9] *Coyne,* 53 F.3d at 457.

 Consistent with the summary judgment standard, "we canvass the material facts in a light that flatters, but does not impermissibly distort," the nonmoving party's claims, and indulge all inferences in favor of that party.[10] Because in the instant case there are no genuine issues of material fact, what remains to be decided are questions of law.[11] Summary Judgment is therefore appropriate.

## B. THE STATUTE OF LIMITATIONS STANDARD

 In this diversity tort action the statute of limitations is substantive law, therefore Puerto Rico law controls. *See Erie v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Coyne,* supra at 457; and *Daigle v. Maine Medical Center,* 14 F.3d 684, 689 (1st Cir.1994). Puerto Rico's Civil Code provides that actions for obligations arising from fault or negligence prescribe one year from the moment aggrieved person has knowledge

of the injury; that is to say, the statute of limitations provides a one-year term for a tort action. P.R.Laws Ann. tit. 31, § 5298 (1990). The term is interrupted by an extra-judicial claim, acknowledgment of the debt, or filing of a complaint. P.R.Laws Ann. tit. 31, § 5303 (1990). *See also Silva–Wiscovich v. Weber Dental Mfg. Co.,* 119 P.R. Dec. 550 (1987); *Díaz de Diana v. A.J.A.S. Ins. Co.,* 110 P.R. Dec. 471, 474 (1980).

 The general rule is that the one-year "term does not start to run from the occurrence of the negligent act or damage, but from the moment the damage is known." *Barretto Peat, Inc. v. Luis Ayala–Colón Sucrs., Inc.,* 896 F.2d 656, 658 (1st Cir.1990) (citing *Rivera–Encarnación v. Estado Libre Asociado de P.R.,* 113 P.R.Dec. 383, 385 (1982)). Although the general rule establishes that the one-year term starts on the date the plaintiff becomes aware of the damage and who caused the damage, if the plaintiff's lack of awareness is due to his own negligence or carelessness, then the prescriptive period will begin to run from the date the alleged tort occurred. The plaintiff is then presumed to have knowledge of the injury at the time of the tortious act, and has the burden of proving that he learned of the act at a later date. *See Rivera–Encarnación* at 385 (citing L. Diez Picazo, *La Prescripción en el Código Civil,* 240 (Barcelona, Bosch ed. 1964)). *See also* H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico* § 8.06 (J.T.S. 2d Ed.1986).

---

9. Essentially, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both 'genuine' and 'material'." *Mottolo v. Fireman's Fund Ins. Co.,* 43 F.3d 723, 725 (1st Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986)). "The nonmovant, however, may not rest upon mere denial of the pleadings." *Mottolo,* 43 F.3d at 725. *See also* Fed.R.Civ.P. 56.

10. *See Martínez v. Colón,* 54 F.3d at 982; *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Mottolo,* 43 F.3d at 725; *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995).

11. In order for a court to grant summary judgment, the only issues to be decided by such a motion are issues of law. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725 (2nd ed. 1983); *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

78

The First Circuit Court of Appeals has stated that specific knowledge of the tort in question consists of knowledge of the injury and the person who caused said injury. *Hodge v. Parke Davis & Company*, 833 F.2d 6, 7 (1st Cir.1987) (citing *Colón–Prieto v. Géigel*, 115 P.R.Dec. 232, 247 (1984)). A defendant has the right to be free from a claim once the term to file suit set by law has expired. Unless a civil action is timely filed, or the time limit has been properly tolled, the defendant's right to be free from a claim is as important as the aggrieved party's right to file an action. Although the aggrieved party need not know the amount of damages, the period of limitation begins to run from the moment such party objectively has knowledge of the damage. "This principle of the aggrieved party's knowledge is not undermined by the mere fact that he is ignorant of the amount or scope of the injury suffered. The quantitative fixing or setting of damages is a subject which can wait the execution of judgment." *Ortiz v. Municipio de Orocovis*, 113 P.R.Dec. 484, 486–87 (Official translation 1982).

The Supreme Court of Puerto Rico held in *Colón–Prieto* that the statute of limitations in tort actions starts to run the moment the aggrieved knew of the damage and could have brought the action. However, as in the instant case, *Colón–Prieto* further states, "[o]f course, if ignorance thereof was based on the interested party's negligence or lack of care, only he could be charged with the consequences of such lack of care, and, in such case, it would not be logical to reserve his rights, or to postpone the starting point of the statute of limitations." *Colón–Prieto* at 244 (Official translation 1984).

### III—DISCUSSION

The statute of limitations should be interpreted to run not only from the date of actual knowledge but from any earlier time when the aggrieved person reasonably should have had knowledge of the cause of action. *Ortiz*, 113 P.R.Dec. at 487–88. Plaintiffs contend they did not have sufficient knowledge to file their claim until Dr. Wilkinson informed them, in September 1992, that a Collagen product may have been the cause of their facial deformities. Conversely, Collagen argues that plaintiffs acquired sufficient knowledge to file a complaint on or about 1989, or 1990. The court proceeds seriatim to determine the starting point at which each plaintiff reasonably should have acquired knowledge of their damages and the identity of the causing party or culprit.

### A. EDNA RODRÍGUEZ–SURÍS de PADILLA

Between July and November of 1989, Edna Rodríguez–Surís de Padilla ("Rodríguez") received four (4) collagen treatments from Montesinos. The collagen injection in question was administered in November 1989. (Docket # 62 Exh. 18 p. 21, Rodríguez' deposition). Rodríguez subsequently developed a raised red ridge on both sides of her nose and mouth. (Docket # 62 Exh. 18 p. 28, Rodríguez' deposition). Until March 1992, Rodríguez continued to receive treatment from Montesinos, which included three (3) or four (4) more injections. Montesinos assured Rodríguez that the facial marks would go away with additional treatment. (Docket # 62 Exh. 18 pp. 28, 32, 46, Rodríguez' deposition). In the interim, at the end of November 1989, Rodríguez conferred with two physicians, Dr. Pedro Borrás and Dr. Robert Nevarez at a social event. Dr. Borrás, a neurosurgeon, told Rodríguez that "[I]f it is collagen, it will go away." (Docket # 62 Exh. 18 p. 30, Rodríguez' deposition). Rodríguez also testified that she spoke to Dr. Nevarez at the end of November 1989 and informed him that collagen injections were responsible for her damages:

Q Did you tell Dr. Nevarez that you have had **collagen** injections on your face?

A Yes, I told him so.

Q Did you tell him that the red marks that you had on your face were a **reaction to the collagen** injections?

A Yes, I told him so.

Q What did he tell you other than to come to see him?

A He told me, come to my office. I think he told me it was an adverse reaction to collagen. (emphasis added).

(Docket # 62 Exh. 18 p. 31, Rodríguez' deposition). However, despite Dr. Nevarez's urging, she did not take the time to visit his office. (Docket # 62 Exh. 18 pp. 31–32, Rodríguez' deposition). Later in her testimony, Rodríguez explained that she believed the marks would go away. (Docket # 62 Exh. 18 p. 46, Rodríguez' deposition).

Plaintiff contends that the one-year statute of limitations had not expired when the instant action was filed on September 1, 1993, because she first learned that her problems resulted from the November 1989 injections upon her visit to a Dr. Wilkinson in September 1992. (Docket # 62 Exh. 18 p. 54, Rodríguez' deposition). The Court finds this to have little persuasive force.

It is clear that Rodríguez had sufficient notice of her injuries to file suit, at the end of 1989 when Dr. Nevarez first informed her of her adverse reaction to collagen. Certainly, when Dr. Nevarez suggested she visit his office because of the alleged adverse reaction, Rodríguez was alerted to the fact that a problem with the collagen treatment had occurred, and that such problem was directly related to her facial marks. Her willful failure to follow up on Dr. Nevarez' suggestion that she visit him, on the mistaken belief that she felt the marks would go away cannot excuse her lack of due diligence, nor can it serve to toll the statute of limitations. Rodríguez knew that Montesinos was the person who injected her and that the injections in November 1989 caused her damages. (Docket # 62 Exh. 18 p. 28, Rodríguez' deposition). Further, Rodríguez testified that in November 1989, when she conferred with Dr. Nevarez, she told him she had had collagen injections and the red marks on her face were a reaction to the collagen injections. (Docket # 62 Exh. 18 p. 31, Rodríguez' deposition). Therefore, as of November 1989 the statute of limitations began to run and the Court finds no record of tolling.

■ Even if, arguendo, the notice from Dr. Nevarez be deemed insufficient, then by the time Rodríguez discontinued treatment with Montesinos in March 1992, she had notice. A reasonable person who suffers from facial deformities for more than two years and remains in treatment with the person who allegedly caused said deformities is constantly made aware of the unsightly injuries. Furthermore, Rodríguez testified Montesinos had explained her reaction to the November 1989 collagen injection could have been caused by the *"collagen* had spoiled," or "[t]hat [Montesinos] had put too strong a *collagen* in me." (Docket # 55 Exh. 6 p. 42, Rodríguez' deposition) (emphasis added). Consequently, even if Rodríguez was not aware until her last treatment from Montesinos, in March 1992, then the one-year statute of limitations would still have expired before suit was filed in September 1993. Unfortunately for Rodríguez–Surís, the extent of the injury is not the criteria in determining the commencement term of the statute of limitations; mere knowledge that a tort caused injury has occurred suffices to trigger the statute's starting point. *Ortiz,* 113 P.R.Dec. at 487.

The Court hereby finds the statute of limitations expired on Rodríguez' claim before suit was filed. Summary judgment is thus **granted** for defendant, Collagen, on Rodríguez' claim.

## B. MARÍA ROSA GONZÁLEZ–SAN JUAN de CORTÉS

■ The first collagen treatment that María Rosa González–San Juan de Cortés ("González") received from Montesinos was in August 1989. The second was October 24, 1989. The following day, González noticed a bump or rash and a slight itching had developed. (Docket # 62 Exh. 12 p. 17, González' deposition). González testified that she was told in 1989 or early 1990, by Dr. Isabel Banuchi, a dermatologist, that she was irresponsible for letting Montesinos administer the collagen treatments, because Montesinos was not a doctor. (Docket # 62 Exh. 12 p. 18, González' deposition). Although physicians told González not to have any more collagen, she received two or three more treatments with Montesinos in 1990 or 1991. (Docket # 55 Exh. 13 p. 53, González' deposition) (Docket # 62 Exh. 12 p. 14, González' deposition). The last time that González spoke to Montesinos was at the end of 1990 or 1991. (Docket # 55 Exh. 12 p. 45, González' deposition). Further, González testified

80

that Montesinos told her that her condition could be related to the "dead" collagen Montesinos had used. (Docket # 55 Exh. 13 pp. 52–53, González' deposition).

González also visited Dr. Walter Benavent. In a letter written by Dr. Benavent to Dr. Delustro of Collagen Corporation, dated December 26, 1990, Dr. Benavent described a patient who had consulted with him regarding "hardened nodules along both nasolabial folds, the corner of the mouth and chin following injections of collagen," that these "were done in late September, early October 1989," and that the nodules were "persistent". Dr. Benavent's letter goes on to describe that "the person who injected the Collagen is not a physician as far as the patient knows and that the collagen had been stored in a refrigerator which was not operating for lack of electricity following Hurricane Hugo". (Docket # 55 Exh. 8 p. 1, Dr. Benavent's letter). The purpose of Dr. Benavent's letter was to ask Dr. Delustro for advice to try to correct his patient's problem. Dr. Benavent testified that the patient he was describing in his December 26, 1990 letter was the plaintiff González. (Docket # 55 Exh. 9 pp. 16–17, Dr. Benavent's deposition).

Clearly, after González visited Dr. Benavent, sometime before the December 26, 1990 letter was written, she had the requisite knowledge that she had suffered an injury resulting from the collagen treatment. Furthermore, at that time, Dr. Benavent told González, when asked what she could do about the problem with the nodules, "the only thing that I could think would be surgery to excise the areas, ... I told her if we cut it, regardless of how faint they were, they would be permanent." González, however did not accept the procedure because she did not want to have any permanent scars. (Docket # 55 Exh. 19 p. 19, Dr. Benavent's deposition). Lastly, González testified that, "Dr. Benavent told me that it might last forever." (Docket # 55 Exh. 13 pp. 52–53, González' deposition).

Moreover, González testified that after her second injection in October 1989, but before the third (i.e., at the end of 1990 or 1991. (Docket # 55 Exh. 12 p. 45, González' deposition)), she had been told by Dr. Carranza

that he thought she was having a reaction that was the result of whatever material was injected into her face. (Docket # 62 Exh. 12 p. 69, González' deposition). Notwithstanding the aforesaid, González contends that the statute of limitations had not expired when the action was filed because the first time she realized the November 1989 injections caused her problems to such an extent that even with corrective surgery the rashes and marks would not be eliminated, was when she visited Dr. Wilkinson in San Antonio in September 1992. (Docket # 62 Exh. 12 pp. 60–61, González' deposition). The Court also finds this argument to be unpersuasive and is inconsistent with the record. What González really argues is that she knew she had suffered collagen related injuries in 1989, but was unaware of the extent of her injuries until she visited with Dr. Wilkinson in September 1992. Unfortunately for González, the extent of the injury is not the criteria in determining the commencement term of the statute of limitations; mere knowledge that a tort caused injury has occurred suffices to trigger the statute's starting point. *Ortiz,* 113 P.R.Dec. at 487.

Objectively, González reasonably had notice of her injuries, sufficient to file suit, at the end of 1990 when she spoke with Dr. Benavent. González knew that Montesinos was the person who injected her, and Montesinos readily let clients know the injections were collagen. In fact, González testified that Montesinos, after the first treatment in August 1989, had told her that the injections were animal collagen. (Docket # 62 Exh. 12 p. 14, González' deposition). Thus, the Court holds the one-year statute of limitations began to run in 1990, and because the statute was not tolled and suit was not commenced until September 1993, González' claim is time-barred.

■ Even if, arguendo, the notice from Dr. Benavent be deemed insufficient, then by the time González discontinued collagen treatment with Montesinos on or about 1990 or 1991, she had notice. González remained in treatment with the person who allegedly caused the facial marks even after physicians advised against further treatments by Montesinos. The Court hereby finds the statute

of limitations expired on González' claim before suit was filed. Therefore, summary judgment is also **granted** on this claim for defendant Collagen.

## C. ANNETTE PÉREZ de PEDREIRA

■■■■ Annette Pérez de Pedreira ("Pedreira") developed her facial deformity five to six weeks after being treated with collagen by Montesinos about September 1989. (Docket # 62 Exh. 15 p. 37, Pedreira's deposition). Montesinos informed Pedreira that the material injected into her was bovine collagen:

> Q Where did Bertha Montesinos tell you the material came from that she used?
>
> A The collagen? What do you mean where did it come from?
>
> Q You know what kind of collagen it was?
>
> A Bovine collagen she told us.
>
> Q She told you it was bovine collagen?
>
> A Yes.

(Docket # 62 Exh. 15 p. 14, Pedreira's deposition). Pedreira, testified that the last time she visited Montesinos was about June or July 1990. (Docket # 62 Exh. 15 p. 21, Pedreira's deposition). At that time, Montesinos told Pedreira that her problem was related to the injections. (Docket # 55 Exh. 14 p. 49, Pedreira's deposition). In fact, during the latter part of 1990 Pedreira also visited Dr. Segarra, a plastic surgeon, who informed her that he could do nothing for her problem. (Docket # 62 Exh. 15 pp. 21–22, Pedreira's deposition). When the deformities persisted, Pedreira received treatment from Dr. Latoni for the entire year of 1991. (Docket # 62 Exh. 15 p. 22, Pedreira's deposition). Dr. Latoni administered Kenalog injections and a dermabrasion technique in an attempt to correct Pedreira's facial condition to no avail. (Docket # 62 Exh. 15 p. 22, Pedreira's deposition). Thereafter, in January 1992, Pedreira explained her ordeal to Dr. Walter J. Benavent. (Docket # 62 Exh. 15 p. 22, Pedreira's deposition). According to Dr. Benavent records:

> [Patient] relates that about October 1989 She [sic] had supposedly Collagen injected into the brow and naso-labial folds by a beautician who comes here to P.R. from Miami. The injected areas have turned into subcutaneous nodules. Subsequently she had cortisone injected intra-lesionally but no appreciable improvement was noted.
>
> An examination on both naso-labial folds and chin there are multiple nodules which are not painful to palpation.

(Docket # 62 Exh. 14 p. 1, Dr. Benavent's patient records for Annette Pedreira 1/22/92).

From as early as July 1990 when Montesinos explained that her problems were related to the treatment being given, or as late as January 1992 (i.e. the date shown on Dr. Benavent's record) Pedreira had ample knowledge that she had been injured by collagen. Plaintiff however, contends that the statute of limitations had not expired when the action was filed because Dr. Wilkinson was the first and only physician to tell Pedreira "that what they had there was collagen and that those permanent marks had remained." (Docket # 62 Exh. 15 p. 28, Pedreira's deposition). Once again, the Court once finds this argument to have little force and is also unpersuasive.

In June or July of 1990, Pedreira had sufficient notice of her collagen caused injuries to file suit, when she discontinued treatment with Montesinos and was informed by Montesinos that her problem was related to the injections. Pedreira knew that Montesinos was the person who injected her and Pedreira had been informed by Montesinos the injections were bovine collagen. Certainly during the latter part of 1990, when Dr. Segarra informed the plaintiff he could not help her, Pedreira knew she was injured. Therefore, at the end of 1990 the statute of limitations began to run and as in the previous claims the Court finds the statute has not been tolled.

The Court hereby finds the statute of limitations expired on Pedreira's claim before suit was filed. Accordingly, summary judgment is **granted** on this claim for defendant Collagen.

## D. VANESSA PÉREZ de FERNÁNDEZ

■■■■ Vanessa Pérez de Fernández ("Fernández") had received two treatments from

Montesinos before the one in question, which occurred on or about October 1989. The afternoon or evening of the treatment, Fernández noticed that the areas where she had been injected, along her expression lines and on her forehead between her eyebrows, were slightly raised and red. (Docket # 62 Exh. 17 pp. 13–14, Fernández' deposition). Fernández testified that she started visiting Dr. Latoni for her condition in early 1990. Fernández informed Dr. Latoni that Montesinos administered the collagen injections to her face. "Q Did you tell Dr. Latoni that you had gone to Bertha Montesino [sic] and she had given you collagen injection in the face where the red marks and the raised places were. A Yes sir." (Docket # 62 Exh. 17 p. 18, Fernández' deposition). Dr. Latoni treated her nine or ten times with Kenalog injections and a dermabrasion technique for her condition. (Docket # 62 Exh. 17 pp. 18–19, Fernández' deposition).

Sufficient notice of damages was given to Fernández in early 1990, when she sought treatment for her deformities with Dr. Latoni. As previously stated, Fernández knew that Montesinos was the person who injected her, and she knew the injections were collagen. At the end of 1990 the statute of limitations began to run and there is no record of tolling.

The Court hereby finds the statute of limitations expired on Fernández' claim before suit was filed in September 1993. Similar to the three previous plaintiffs' claims, summary judgment is hereby **granted** on this claim for defendant Collagen.

## IV—CONCLUSION

Plaintiffs contend that they first knew of the damage after visiting Dr. Wilkinson sometime in September 1992. Taking the evidence in a light most favorable to the plaintiffs, the fact remains that the record clearly indicates that plaintiffs were aware of their injury, and of who allegedly caused said damage by 1990.

As stated above, the Court holds that the one-year statute of limitation for plaintiffs' causes of action began to run, at the very latest, in the beginning of 1992. At that time, plaintiffs had knowledge of their injuries, and of the entity ("collagen") that caused the tort. With due diligence, the identity of the manufacturer of the material injected could have easily been ascertained by the plaintiffs. Further, suit could have been commenced in this court, or at state court, against Montesinos and a fictitious named company defendant, to describe the collagen manufacturer, as allowed under Puerto Rico law. P.R.Laws Ann. tit. 32, App. III R15.4 (1983). Plaintiffs, however, opted to wait until the time limit to file suit had long expired when the complaint was filed on September 1, 1993.

Accordingly, upon due deliberation, having found that plaintiffs' claims are time-barred by the statute of limitations, the Court hereby grants defendant Collagen's motion for summary judgment. Plaintiffs are once again forewarned, they must show cause within **twenty (20) days, which term will expire on September 10, 1996,** as to why the complaint against Montesinos should not be dismissed.

**WHEREFORE,** the Court hereby **DISMISSES WITH PREJUDICE** plaintiffs' claims against defendant Collagen. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**